AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Western District of Texas

| | |
|---|---|
| United States of America<br>v.<br>YAN, Yulin<br>LIU, Yongxiang<br><br>Defendant(s) | EP:19-M -08737 |

FILED
2019 OCT -3  AM 10: 41
WESTERN [DISTRICT OF TEXAS]
BY _____ DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __October 1, 2019__ in the county of __El Paso__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii) and (a)(1)(B)(i) - Conspiracy to Transport Aliens for Finacnial Gain. | Defendant(s) conspire to knowingly and in reckless disregard of the fact that an alien has come to, entered, or remained in the United States in violation of law, did transport, move, and attempt to transport and move such an alien within the UnitedStates in furtherance of said violation of law, for the purpose of commercial advantage or private financial gain. |

This criminal complaint is based on these facts:

I further state that I am a Homeland Security Investigations Special Agent and this complaint is based on the facts stated within the attached affidavit:

☑ Continued on the attached sheet.

_____
Complainant's signature

Edgar Delgado, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: __10/03/2019__

_____
Judge's signature

Leon Schydlower, U.S. Magistrate Judge
Printed name and title

City and state: __El Paso, Texas__

Oath Telephonically Sworn
At 11 : 45 PM
Fed.R.Crim.P. 4.1(b)(2)(A)

## AFFIDAVIT

On September 30, 2019, at approximately 1930 hours, a tan in color Toyota Highlander bearing Chihuahua license plate ENN-9936 and a black 2019 Volkswagen SUV bearing Texas temporary license plate 50467Y6 were travelling eastbound on a service road towards Sierra Blanca, Texas and in tandem. Border Patrol Agent (BPA) Jose Pacheco was travelling on the service road and witnessed the aforementioned vehicles pass his location. BPA Pacheco decided to follow the vehicles and run checks on both the Chihuahua and the Texas plates utilizing Big Bend Sector Radio. Previous events have identified that the service road, also known as the "old road", is frequently used by Alien Smuggling Organizations (ASO's) to circumvent the Sierra Blanca Border Patrol Immigration Checkpoint while smuggling illegal aliens and/ or illegal narcotics. BPA Pacheco requested assistance from the United States Border Patrol (USBP) checkpoint via radio to assist with the two vehicles.

As BPA Pacheco approached the 2019 Volkswagen, he noticed the rear passengers inside the vehicle attempting to hide by ducking. At that time, radio advised BPA Pacheco records checks for the 2019 Volkswagen was registered to YAN, Yulin out of Las Vegas, Nevada. At that moment, at approximately 1935 hours, BPA Pacheco activated his assigned Border Patrol Unit's emergency lights to conduct a vehicle stop, for the purpose of an immigration inspection of its passengers. The black Volkswagen came to a stop near mile marker 103, just east of the USBP checkpoint, still on the service road. The tan Toyota Highlander bearing Chihuahua plates was also stopped by BPA Ulises Gamez on the service road.

BPA Pacheco approached the vehicle from the driver-side door, identified himself as a United States Border Patrol Agent, and noticed the vehicle contained a total of seven (7) occupants. BPA Pacheco questioned the driver, later identified as YAN, Yulin as to his citizenship. YAN presented a valid Employment Authorization Card (USCIS# 206-346-954). YAN then freely stated that "All the other passengers were legal and had their documents at the hotel." As agent Pacheco illuminated the rear passenger area, he noticed all the passengers attempting to conceal themselves by laying down on each other. BPA Pacheco asked YAN to lower the rear driver side window in order to determine the citizenship of the other passengers. As YAN lowered the window, the five (5) rear passengers sat up straight in their seats. BPA Pacheco questioned the five (5) rear passengers and the front passenger individually as to their citizenship. All six (6) passenger were looking forward and avoiding eye contact and failed to reply to his request of declaring their citizenship. BPA Pacheco asked YAN if any of the passengers spoke the English language and YAN replied "No". BPA Pacheco asked YAN to ask the six (6) passengers if they had any legal documents. YAN once again replied by saying that all six (6) passengers left their documents in the hotel. Yan stated that they were all staying at the Motel 6 in El Paso, Texas. BPA Pacheco asked YAN to ask the six (6) passengers if they had

any type of identification with them, to which he replied "No". BPA Pacheco then requested for back up to determine the citizenship of the rest of the passengers. At this time BPA Miguel A. Nevarez arrived on the scene to assist.

Agent Nevarez approached YAN and asked him how he knew the passengers of the vehicle. YAN stated that he met them outside the place that he had been staying at for the last two weeks. Agent Nevarez asked where he had been staying. YAN said, "at the Studio 6 in El Paso, Texas". Agent Nevarez questioned YAN as to where he lived. YAN stated he lived in California and was in El Paso trying to open a restaurant. Agent Nevarez asked YAN where they were going to. YAN said they were going to go see a friend then come back to El Paso. Agent Nevarez asked YAN if he had the address of where they were going. YAN stated it was about 200 miles east and that they had been trying to get the friend's address while driving.

Agent Nevarez asked YAN how he met the passengers of the vehicle. YAN stated he had met them while he was outside the hotel he was residing at. YAN stated they lived on the same street and he noticed they were speaking Chinese, so he started a conversation with them. Agent Nevarez asked if the passengers had any passports or immigration documents. YAN stated they had forgot them at the hotel. Agent Nevarez asked why they would leave them at the hotel if they didn't stay there. YAN laughed nervously and said, "I don't know". Agent Nevarez then questioned YAN if the passengers came into the United States legally or illegally. YAN stated that he did not know. Agent Nevarez told YAN that he had been conversing with them and never asked how or what they were doing in the United States. YAN laughed nervously and shrugged his shoulders. At this time, Agent Nevarez advised YAN that since the passengers did not have any form of identification, they were going to be transported to the checkpoint to verify the status of everyone in the vehicle.

After questioning all the passengers, BPA Pacheco suspected that YAN was possibly smuggling the other six (6) individuals further into the country. YAN and all the passengers were transported to the Sierra Blanca Checkpoint to determine their legal status in the country and for further investigation.

BPA Gamez made contact with the tan Toyota Highlander bearing Chihuahua plates that had been travelling in tandem with the Volkswagen, for the purpose of an immigration inspection of its passengers. BPA Gamez approached the vehicle from the driver-side door, and identified himself as a United States Border Patrol Agent. BPA Gamez questioned the driver as to his citizenship. The driver was later identified as LIU, Yongxiang. LIU presented a valid B1/B2 Border Crossing Visa. BPA Gamez questioned LIU as to why he was taking the service road. LIU stated that he needed fuel and food. BPA Gamez questioned LIU if he was traveling with the black Volkswagen that was following him to which he replied "no". At the time, BPA Pacheco requested that LIU be detained and transported

to the Sierra Blanca Checkpoint for further investigation. LIU was detained due to possibly being involved with YAN in an illegal alien smuggling scheme.

Homeland Security Investigations (HSI) Special Agents (SA's) Edgar Delgado and Sergio Martinez were summoned to the Sierra Blanca checkpoint to assist with the investigation. SA Delgado read YAN his Miranda Statement of Rights in the English language which were then translated to the Mandarin language with the assistance of a certified interpreter. YAN acknowledged he understood his rights and agreed to provide a statement without the presence of an attorney. YAN stated that he arrived at El Paso on 09/11/2019 for the purpose of establishing a restaurant and in the meantime, had rented a hotel room at the Studio 6 located on Lomaland and Gateway West. YAN stated that a few days later, he met LIU, whom he knew as "Tony" at the time, at a Vietnamese restaurant for the first time. YAN stated that he had never made contact with LIU before but became acquainted with him as they both spoke Chinese. YAN stated that during this meeting, him and LIU exchanged phone numbers. YAN stated that several days later, LIU called him and offered him a job as a driver for people with Dallas as their destination. YAN stated that on September 29, 2019, LIU contacted him via telephone and asked him to rent hotel rooms. YAN stated that he rented a couple of rooms at the Motel 6, which is located directly across the street from the Studio 6 he was staying at. YAN stated that several Chinese people arrived later by themselves and occupied the rooms he had rented. YAN stated that LIU met him the following the day and paid him $500 in cash for the rooms he had rented and other expenses. YAN stated that LIU than advised him to transport the previously mentioned people in the afternoon to Dallas and that upon arrival he would be paid $7000. YAN described the people he was to transport as Chinese and stated that he believed they were illegally present in the United States based on his interaction with them. YAN stated that LIU advised him that he would guide him on his trip to Dallas, in his own vehicle, for approximately an hour and advised him not to exceed the posted speed limit. YAN stated that LIU assisted him in loading the people into YAN's vehicle before they commenced their trip to Dallas. YAN stated that he was following LIU when he was stopped by Border patrol near the checkpoint.

SA Delgado read LIU his Miranda Statement of Rights in the English language which were then translated to the Cantonese language with the assistance of a certified interpreter. LIU stated that he was hired by "someone" to drive on the route he had been stopped by Border Patrol in. LIU was asked to elaborate on who "someone" was but replied that he would only give specific answers if agents promised him that his family would be protected. LIU stated that his family was, at the time, in China and feared that they would be in danger if he provided details about an illegal organization that operates in China and Mexico. LIU was advised that agents could not and would not make any promises reference the safety of his family. LIU became teary and blurted "I know its bad" and stated that he was regretful of what he had done. LIU continued to talk and stated that he

had been offered $8000 to drive from El Paso to Marfa, Texas and back to El Paso. LIU stated that he was instructed to drive and report any activity or incidents he encountered along the route. LIU was asked to specify the activities or incidents he was required to report but remained apprehensive in answering the question. LIU was asked if he was guiding YAN around the checkpoint when they had been stopped; LIU denied guiding any vehicles. LIU was shown a picture ID of YAN and was asked if he knew him. LIU stated that he had seen him at the Motel 6 in El Paso. LIU stated that he then believed that the "big bosses" had instructed YAN to follow him without his knowledge. Throughout the interview, LIU was evasive in answering all questions and continued to reference the "big bosses" and the fear he had of them. LIU stated that the "big bosses" had instructed him to not disclose any details refence their organization of their operations.

This affidavit is being submitted for the limited purpose of establishing probable cause for the arrest of YAN and LIU and does not set forth all my knowledge about this matter.

This affidavit is based on my personal knowledge, as well as the basis of information furnished to me by other law enforcement officers.